**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

**FRESNO DIVISION**

| | |
|---|---|
| STEVEN DALE BELL, | No 1-08-cv-01090 VRW |
| Petitioner, | |
| v | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |
| JAMES D HARTLEY, | |
| Respondent. | |

Petitioner Steven Dale Bell, a state prisoner proceeding pro se, has filed a petition for a writ of habeas corpus under 28 USC § 2254. Doc #1.

Respondent James D Hartley both opposes the issuance of the writ and requests a stay of proceedings pending the Ninth Circuit's en banc review in Hayward v Marshall, 512 F3d 536 (9th Cir 2008); reh'g en banc granted, 527 F3d 797 (9th Cir, May 16, 2008) argued June 24, 2008. Doc #17. Petitioner opposes the stay. Traverse (Doc #18) at 2-3.

Habeas proceedings "implicate special considerations that place unique limits on a district court's authority to stay a case in the interests of judicial economy," INS v Yong, 208 F3d 1116, 1120 (9th Cir 2000). The court has determined that this habeas matter can readily be resolved without the Ninth Circuit's

anticipated ruling in Hayward and that a stay would therefore not be appropriate. The request to stay this proceeding is therefore DENIED.

For the reasons stated herein, the petition for habeas corpus is also hereby DENIED.

I

A

The following facts were established by evidence at petitioner's trial.[1] Petitioner married Cathy Gandrud in 1993. A few months after the wedding, petitioner begun an extramarital affair with Sue Montoya. Cathy and petitioner had a custom of commemorating their wedding day on the fifteenth day of each month. On August 15, 1994, a few days after returning from a secret getaway with Montoya, petitioner woke Cathy with a kiss and asked her to close her eyes and sit at the foot of the bed, explaining that he wanted to give her an anniversary present. Cathy complied. The next thing she knew, she was lying on the floor with a plastic bag stretched over her face. She struggled to get away and suddenly the bag was removed. Petitioner told her that she had hurt herself, but when Cathy noticed that she was bleeding from a cut on her head and spotted a club-like metal device nearby, she concluded that petitioner had tried to kill her. She began to scream and demanded that petitioner call 911. Police responded to

---

[1] This factual summary is abbreviated from the order denying petitioner's previous federal habeas petition arising from his 2004 parole denial. That order set forth factual findings contained in the unpublished state court of appeal opinion affirming petitioner's conviction. Bell v Mendoza-Powers, 2007 WL 4219367, *1-4 (ED Cal Nov 27, 2007).

2

the call and arrested petitioner. Police later found the club-like device and a plastic bag under a bed in the daughter's bedroom. Cathy was found to have suffered a blunt-instrument wound to the back of her head which required sutures. She was treated and released from hospital later in the day, but continued to experience neurological symptoms thereafter.

At trial, petitioner's theory of defense was that he had not attacked Cathy. He testified that he found her on the floor bleeding, entangled in a plastic bag and that although he had built the club-like device, he had not used it that day.

In 1995, petitioner was convicted by a jury in Santa Clara County of attempted first degree murder and assault with a deadly weapon. Doc #1 at 3. Petitioner was sentenced to an indeterminate term of life plus a four-year enhancement for the use of a deadly weapon. He is currently serving his sentence at the California Department of Corrections and Rehabilitations, Avenal State Prison. Id. In 1996 the court of appeal affirmed this conviction in an unpublished opinion not included in the record herein. In 1997, the high court followed suit.

In 2004, the Board of Parole Hearings ("Board") denied parole in petitioner's first suitability hearing. Doc #2 at 13-14. Petitioner unsuccessfully sought habeas relief in the state superior, appellate and high courts and in this federal court. Bell, 2007 WL 4219367, *1, modified by order dated March 4, 2008, 2008 WL 598171.

On November 7, 2006 the Board conducted a lengthy hearing, found petitioner unsuitable for parole for the second time and deferred rehearing for two years. Transcript of Board of

3

Parole Hearings at Avenal Prison at 118 (Doc #17 Ex 5 at 118)[2].
The Board found that petitioner was "not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison." Id.

The Board included in its decision specific findings as follows:

> You committed the offense in an especially cruel manner. On the day of the commitment offense you essentially woke your wife up with a kiss on the cheek. As she walked to the bathroom, you asked her to sit down and close her eyes and that [sic] she thought you were giving her another anniversary present. She heard rustling in the closet. Suddenly she woke up with an injury to the back of her head due to the blow from the pipe, and with a bag over her face with you standing above her. The offense was carried out in a manner which demonstrates a callous disregard to human suffering. The motive for the crime was inexplicable or very trivial in relation to the offense. A recent psychological report, dated November 11, 2005, authored by Dr Schroeder, indicates a need for a longer period of observation and evaluation or treatment. Therefore, a longer period of observation and/or evaluation of the prisoner is required before the Board should find that the prisoner is suitable for parole. The panel recommends today that you should remain disciplinary-free and you should cooperate with clinicians in the completion of a clinical evaluation.

Id at 120-21.

Petitioner properly exhausted his habeas claims through the state court system. On May 15, 2007, the superior court in Santa Clara County denied the petitioner's habeas petition, relying on the California Supreme Court's rule in <u>In re Dannenberg</u>, 34 Cal 4th 1061, 1096 n 16 (2005) that "the Board must apply detailed standards when evaluating whether an individual is unsuitable for parole on public safety grounds." Id. The superior court, in a

---

[2] Page numbers correspond to the numbering in the original document. The transcript of the 2006 Board of Parole Hearings can be found in Doc #17 Ex 5 at 8-11.

**4**

one-page opinion that contained no findings of fact, explained that
"because there is 'some evidence' of egregious acts beyond the
minimum necessary to sustain the conviction, the crime itself
appears to show unsuitability under the 'detailed standards.'"
Order dated May 15, 2007 (Doc #17 Ex 6). The court of appeal and
the high court summarily denied habeas relief on August 2, 2007 and
March 12, 2008, respectively. Doc #17 Exs 7 and 9.

     Petitioner filed the petition herein on July 7, 2008.
Doc #1. Respondent filed an answer opposing the issuance of a writ
(Doc #17) and petitioner filed a traverse. Doc #18.

II

     28 USC § 2254 "is the exclusive vehicle for a habeas
petition by a state prisoner in custody pursuant to a state court
judgment, even when the petitioner is not challenging his
underlying state court conviction." <u>Sass v California Board of
Prison Terms</u>, 461 F3d 1123, 1126-27 (9th Cir 2006), (citing <u>White v
Lambert</u>, 370 F3d 1002, 1006 (9th Cir 2004)). The petition cannot
be granted unless the state court decision "was contrary to, or
involved an unreasonable application of, clearly established
Federal law, as determined by the Supreme Court of the United
States," or "was based on an unreasonable determination of the
facts in light of the evidence presented in the State court
proceeding." 28 USC § 2254(d)(West 2009).

     California Penal Code § 3041 vests all California
prisoners whose sentences provide for the possibility of parole
with a constitutionally protected liberty interest in the receipt
of parole release date. <u>Irons v Carey</u>, 505 F3d 846, 850 (9th Cir

5

2007). (See also <u>Sass</u>, 461 F3d at 1128-29; <u>McQuillion v Duncan</u>, 306 F3d 895, 900 (9th Cir 2002)).

The Supreme Court has held that "revocation of good time does not comport with the 'minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by some evidence in the record." <u>Superintendent, Massachusetts Correctional Inst v Hill</u>, 472 US 445, 454 (1984). The Ninth Circuit applied the <u>Hill</u> standard to the parole context: "a parole board's decision deprives a prisoner of due process with respect to this interest if the board's decision is not supported by 'some evidence in the record.'" <u>Irons</u>, 505 F3d 846 at 851 (citing <u>Sass</u>, 461 F3d at 1128-29).

Respondent asserts that the "some evidence" standard is not clearly established law for purposes of AEDPA because the Supreme Court has never used it in the context of parole proceedings. Doc #17 at 5-6. But this court is bound by Ninth Circuit rulings applying the <u>Hill</u> standard to parole suitability determinations. (See <u>Irons</u>, 505 F3d at 851; <u>McQuillion</u>, 306 F3d at 904; <u>Biggs v Terhune</u>, 334 F3d 910, 915 (9th Cir 2003).

In order to determine whether a state court's decision was in fact an unreasonable application of clearly established federal law, the federal court reviewing a habeas corpus petition must "look through" to the last reasoned decision of the state court. <u>Avila v Galaza</u>, 297 F3d 911, 918 (9th Cir 2002) (citing <u>Ylst v Nunnemaker</u>, 501 US 797, 803-04 (1991)). Accordingly, this court must examine the decision of the superior court.

Reviewing federal courts "must look to California law to determine the findings that are necessary to deem a prisoner

6

unsuitable for parole, and then must review the record in order to determine whether the state court decision holding that these findings were supported by 'some evidence' constituted an unreasonable application of the 'some evidence' principle articulated in Hill." Irons, 505 F3d at 851.

California Penal Code § 3041(b) (West 2009) provides that the parole board may consider a variety of factors in determining whether the inmate constitutes a threat to public safety. California Code of Regulations § 2402(a) (West 2009) sets forth the criteria for determining suitability for parole: "[r]egardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." Id. Information to be considered includes all relevant, reliable information such as the prisoner's social history, past and present mental state, past criminal history, the base and other commitment offenses, past and present attitude toward the crime and any other information which bears on the prisoner's suitability. 15 Cal Code Regs § 2402(b).

Under these regulations, the circumstances tending to show that a prisoner is unsuitable include: the commitment offense, the offense having been committed in "an especially heinous, atrocious or cruel manner"; prisoner's previous record of violence; "a history of unstable or tumultuous relationships with others"; commission of "sadistic sexual offenses"; "a lengthy history of severe mental problems related to the offense" and "serious misconduct in prison or jail." 15 Cal Code Regs § 2402(c)(A)-(E). Circumstances tending to show that a prisoner is suitable for

7

parole include: no juvenile record; reasonably stable relationships with others; remorse; no significant history of violent crime; "realistic plans for release * * * or marketable skills that can be put to use upon release"; "[i]nstitutional activities indicat[ing] an enhanced ability to function within the law upon release." 15 Cal Code Regs § 2402(d).

III

The petition sets forth eleven claims. The claims can be grouped in two categories. The first relates to petitioner's argument that the Board's finding that he currently poses an unreasonable risk of danger to society if released from prison was not based on "some evidence"; as part of this argument, petitioner challenges the Board's reliance on a psychological report authored by Dr Schroeder. The second group of claims asserts that the Board improperly relied on immutable factors relating to the commitment offense.

Petitioner argues that there is no evidence supporting the Board's "especially cruel and callous manner" finding. This argument is without merit.

Pursuant to § 2402(c)(1) the Board found that the offense was carried out in a "cruel and callous manner" which matches closely with the regulations' "especially heinous, atrocious and cruel manner" language. Doc #17 Ex 5 at 8. The Board specifically found the presence of factors (B) and (D): that the offense was dispassionate and calculated like an execution-style murder and that the crime demonstrated an exceptionally callous disregard for human suffering. There is ample evidence to support both of those

findings. Petitioner woke his wife affectionately, deceived her into closing her eyes, told her to await an anniversary present, then bludgeoned her with a metal club and attempted to suffocate her. As noted in the order denying petitioner's previous habeas petition, "the victim was beaten or clubbed and then suffocated in such a manner as not to cause immediate death but induce terror in the victim." Bell, 2007 WL 4219367 *9.

Moreover, the evidence supporting the denial of parole goes beyond the circumstances of the commitment offense. The Board's decision also relied on petitioner's present attitude toward the crime. Doc #17-5 at 119-20. "Some evidence" supports this finding. Commissioner Poncrave said: "as far as the panel is concerned at no time during the course of the hearing did you show any emotion or remorse." Id at 120. In addition, the Board relied on the life-term evaluation in which the psychologist concluded that petitioner had not expressed remorse or come to terms with his crime. Id at 119. Petitioner argues that the Board counted his choice to decline to discuss the commitment offense against him and "punished" him for exercising this right. Although it might well have been difficult for petitioner to talk about his remorse while exercising his right not to speak about his life-crime, Dr Schroeder's report and petitioner's apparent lack of emotion during the course of the hearing provided evidence to support the Board's finding about petitioner's present attitude toward the crime.

Additionally, the Board supported its denial of parole by finding that petitioner required a longer period of observation and evaluation. "Some evidence" supports this finding.

9

The Board properly considered psychological evaluations in drawing its conclusion as they constitute relevant information relating to petitioner's mental state. The Board considered an evaluation performed at its request by Dr Schroeder. In her evaluation, Dr Schroeder concluded that petitioner posed a below-average risk of danger to others, but noted that before the crime he also posed a low risk. In addition, she pointed out that the crime was not committed in a moment of rage or loss of control but, rather, that petitioner was calm and calculated in his actions. Dr Schroeder also found that petitioner had failed to come to terms with his crime, failed to express remorse and still had "much work to do." Doc #17 Ex 6 at 2.

Petitioner argues that Dr Schroeder's assessment lacks "indicia of reliability," asserting that some of her conclusions were "completely unsupported" and that an evaluation performed by a psychologist retained by petitioner that was supportive of release contradicts the Schroeder report. As mentioned before, Dr Schroeder performed the evaluation specifically for the benefit of the Board and is a board certified forensic psychologist. No reason appears in the record why the Board should treat her as anything but a highly credible and authoritative source. The Board also specifically stated that it considered the views of petitioner's psychologist. Doc #17 Ex 5 at 119. The reviewing court may not re-weigh the evidence presented by the two psychological evaluations. Because Dr Schoreder's assessment recommended against release and the board properly considered her opinion, "some evidence" supports the Board's finding.

10

Petitioner argues incorrectly that the Board ignored circumstances indicating suitability for parole. To the contrary, the Board specifically enumerated the suitability factors it considered: that petitioner has programmed well while incarcerated, developed marketable skills, participated in beneficial self-help programs, had no disciplinary violations and had realistic parole plans. Doc #17 Ex 5 at 118-19. Nonetheless, the Board considered those positive factors insufficient to outweigh the factors disfavoring parole and was entitled to make its determination accordingly.

Petitioner also urges the court to find that the Board improperly relied on opposition expressed by the prosecutor and the victim during the suitability hearing. California law requires the Board to consider such statements of opposition. Cal Penal Code § 3042(f)(3); § 3043(e). Petitioner's argument fails in part because the Board did not base its decision on those statements, but merely noted them. Also, the Board's enumeration of reasons for petitioner's parole denial did not include the opposition of the victim and the prosecutor. Doc #17 Ex 5 at 120.

It is clear that the Board balanced a variety of factors to support its ultimate conclusion that petitioner currently poses a danger to the public if released on parole. There is "some evidence" to support all of the Board's findings.

Petitioner also argues that the Board relied solely on the immutable factor of his commitment offense, thus violating his due process rights as set forth in In Re Lawrence, 44 Cal 4th 1181 (2008) and Biggs, 334 F3d 910. The court in Lawrence held that where evidence of an inmate's suitability for parole is

overwhelming and the commitment offense is both temporally remote and mitigated by circumstances indicating the conduct is unlikely to recur, the immutable circumstance that the commitment offense involved aggravated conduct does not provide "some evidence". Lawrence, 44 Cal 4th 1181 at 1213-14. The Ninth Circuit in Biggs held that over time a continued reliance on the commitment offense and pre-incarceration conduct, without more, could result in a due process violation. 334 F3d 910 at 917.

But the Board did not rely solely on the commitment offense but also on other factors showing unsuitability, supported by ample evidence in the record as previously discussed herein. Moreover, "certain conviction offenses may be so 'heinous, atrocious or cruel' that an inmate's due process rights would not be violated if he or she were to be denied parole on the basis that the gravity of the conviction offense establishes current dangerousness." Lawrence, 44 Cal 4th 1181 at 1228. And furthermore, petitioner's claim is further weakened by the fact that he has served only the minimum term required and has applied for parole only twice.

Petitioner claims that the Board violated his due process rights by deferring his next suitability hearing for two years. This claim, which asserts that the Board failed to follow state law -- specifically California Penal Code § 3041.5 -- is not cognizable on federal habeas review. Estelle v McGuire, 502 US 62, 67-68 (1991).

Petitioner also claims the Board has an unwritten policy under which parole is denied whenever the victim attends the hearing and opposes a prisoner's release. This claim is conclusory

12

and petitioner does not offer any evidence in its support. Instead, petitioner asks this court to order an investigation. In petitioner's previous federal habeas petition a similar claim was properly rejected: "conclusory allegation not supported by statement of specific facts do not warrant habeas relief." Bell, 2007 WL 4219367, *11 (citing James v Borg, 24 F3d 20, 26 (9th Cir 1994)).

In conclusion, the Board's finding that petitioner currently poses a threat to public safety is supported by "some evidence." Accordingly, the state court's evaluation of petitioner's claim did not "result in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 USC § 2254(d).

IV

For the reasons stated herein, the petition for a writ of habeas corpus is DENIED. The request to stay proceedings is also DENIED. The clerk is directed to close file number 1-08-cv-1090 and terminate any pending motions.

IT IS SO ORDERED.

VAUGHN R WALKER
United States District Chief Judge